Case number 17-5012. Gordon C. Reid, appellant v. Mark S. Inch, Director, Federal Bureau of Prisons. Mr. Redmond for the amicus curiae, Mr. Schaefer for the affoliate. Good morning. Good morning. Eric Hashimoto, court-appointed amicus for Mr. Gordon Reid. And with the court's permission, Kayla Bredman, a third-year law student, will be presenting the argument for Mr. Reid. Good morning, Mr. Redmond. Good morning. May it please the Court, we respectfully request two minutes for rebuttal. Mr. Reid's case remains alive because he reasonably expects to suffer the same deprivations when BOP places him in special housing units. Now, this reasonable expectation is at the core of every doctrine relevant to this case. So, for example, given Mr. Reid's reasonable expectation, his case falls squarely within the capable of repetition doctrine because BOP does not contest that his shoe deprivations are too temporary to fully litigate. Mr. Reid reasonably expects to suffer the same deprivations. That's the exception to the mootness doctrine you're relying on and not the voluntary cessation exception? There's a pretty substantial argument that you forfeited that, right? Your Honor, it would go to both capable of repetition and voluntary cessation because voluntary cessation also turns on Mr. Reid's reasonable expectation of injury recurring. And with respect to whether that argument is forfeited, amicus has argued in its briefs that that argument wasn't forfeited. There are exceptional circumstances in the court below, and so that this Court can hear that argument. And besides that, what are those exceptional circumstances? Exceptional circumstances are that Mr. Reid wouldn't have known about how the district court would treat the new evidence and the new argument that it got from BOP, and so Mr. Reid did not respond to that new argument and new evidence. And furthermore, Your Honor, didn't the court give him lots of time and he just chose not to respond? In his case, his entire case was thrown out. But, Your Honor, even if that argument doesn't— On a pending motion to dismiss for mootness, right? The mootness issue was teed up? Yes, Your Honor. The mootness question was teed up. But this Court can nevertheless hear arguments on voluntary cessation because BOP has actually forfeited any argument against that. They only mentioned it in a footnote, and there they just cite the fact that he hadn't raised this argument below, and they cite a case saying that you can only do so under exceptional circumstances. And furthermore, Your Honors, you can hear the voluntary cessation arguments because BOP has done that forfeiture. And so going to Mr. Reid's reasonable expectation, because that's really what this entire case turns on, Mr. Reid has a reasonable expectation for two interrelated reasons. First, so long as he is within BOP's custody, he'll almost certainly be at an institution that practices the deprivations that he challenges, so long as BOP— Why? Why? Why? That's because he challenges— You've embraced regulations which you say are perfectly fine. That's right. And to the extent there is a denial of either exercise or magazines, it's going to be very case-specific. It's going to depend on the reason he's in the shoe. It's going to depend on the judgment of the warden about security issues or who knows what. Those are the regulations, right? Yes, Your Honor. He doesn't challenge. And so to the extent he might or might not end up in a shoe a year from now, we have no idea why he'll be in the shoe, how the new warden will respond, what the justification will be. You're asking us to litigate a wholly hypothetical case that we have no idea how it will play out. No, Your Honor. Respectfully, it's not wholly hypothetical. Mr. Reed has experienced these deprivations that on the merits he claims are illegal and in violation of the regulation program statements. He's experienced them at eight separate BOP institutions. For example, in the exercise, regulations allow wardens— —play out in some hypothetical future case a year from now when a new warden might deny him privileges. Well, so, for example, Your Honor, in the exercise deprivation context, what Mr. Reed has said is that he'll be denied his exercise for punitive reasons because his bed isn't made up properly, for example. And that that is totally outside of— Which is inconsistent with the regulations. Yes, Your Honor. That's right. So we would have to assume that the hypothetical future warden will choose to violate his own regulations. Maybe, but who knows? Your Honor, it would have to take as true Mr. Reed's allegations, which it must at this stage in the litigation, that Mr. Reed has faced this repeated— —that the Bureau of Prisons on a nationwide basis is violating regulations on the order of the director of the Bureau of Prisons. That's what we have to accept. No, Your Honor, you wouldn't have to accept that they have actually violated the regulation. That would be more of a merits question. What Your Honor would have to accept is that he has experienced these practices that he has alleged he has faced at eight separate facilities. And it's not just— Right, but your theory for avoiding mootness depends not simply that there will be recurrence in the sense that he might get into a shoe in the future and he might have a problem in the future. It depends on the proposition that this will be sort of the same case because every deprivation is done on the command of the director of the Bureau of Prisons to, on a nationwide basis, violate these regulations. So, Your Honor, besides the experience that Mr. Reed has had at eight separate facilities, he also has been told repeatedly that this is something—just the way BOP operates. He's been told invariably, his complaint says, that this is BOP policy. A de facto policy, to be sure, but a policy. And this is the way BOP operates, and furthermore, he's gotten affidavit— to establish that a high-ranking DOJ official established a nationwide policy to go violate regulations. Well, for moot— That sounds a lot like Iqbal. I apologize, Your Honor. For mootness purposes, yes, because for mootness purposes, this Court must take Mr. Reed's allegations as true. But, Your Honor, even if— So, are you suggesting maybe under 12b-6 it wouldn't survive, but the dismissal here was 12b-1, so it's a different inquiry? Your Honor, I wouldn't concede that, but what is here is the mootness question. And under the mootness doctrine, his case survives because of the reasonable expectation. But even if— Only if there's a reasonable likelihood that the same controversy will occur in the future, whether you think of that as mootness or either of your two exceptions. That's right, Your Honor. And that depends on the plausibility of your factual allegation that this is not simply case-by-case different events that are happening for different reasons by different guards and wardens on the ground, but this is being done pursuant to a nationwide order by the head of the VOP to violate these regulations on a very categorical basis. And just deny these privileges willy-nilly. Your Honor, even if it's not that category, even if it's not nationwide, as Mr. Reed alleges, he nevertheless faces a reasonable expectation because this is not an ordinary case where he faced the deprivations at one prison. He faced them at eight separate VOP institutions, and he's got a reasonable expectation of going back to them. For example, in Oklahoma City, which he specifically named as an institution that practices the shoe deprivations, he's been there repeatedly. Most recently, he went from Atlanta to Oklahoma City. If there's no nationwide policy decreed by the head of VOP, what possible reason do we have to think that this would happen for any reason other than whatever happens in the next case? Your Honor, because he could return to one of these facilities that has practiced these deprivations. So in Oklahoma City, he specifically alleges that they practice that. He's been in their shoe on four separate occasions. Most recently, he went from Atlanta to Oklahoma City, then Tucson, back to Oklahoma City, then to Coleman, then back to Oklahoma City again. He's in Lewisburg now, and VOPs normally, when an inmate is done at Lewisburg, transfer them out again. It may very well be that he goes right back to Oklahoma City, where he will experience the challenge conduct. So even if it's not nationwide, there's a very reasonable likelihood that he's going to go back to an institution that does practice these deprivations that he alleges are illegal. And given that practice, that he will probably be in one of those institutions, he'll almost certainly again be in shoe because VOP has put him there repeatedly. And so that gives us his reasonable expectation. Okay, great. We'll give you some time back. Thank you. We'll hear from the government now. May it please the Court, Dan Schafer for the Bureau of Prisons. Your Honor, I'd like to start by addressing just very briefly the forfeiture argument. Judge Katsas, I believe you're right that Mr. Reed did waive this argument by not raising, I'm sorry, the voluntary cessation exception argument. It was waived by not raising it below. And this Court's decision in Elliott, for example, makes clear that amicus cannot raise entirely new arguments on appeal that weren't raised below. When arguing waiver, a footnote is going to trump not making the argument. What do you do with the core argument on the other side that he has alleged a nationwide policy, and if you accept that premise, this controversy is reasonably likely to recur? I don't think that's a fair reading of the petition, even under a very liberal reading of the petition. If you look at it, it's a short pleading. It's very clear that what the petitioner is alleging is not a challenge against some system-wide or nationwide policy. He's merely saying that here are the policies, and he references them, the program statements in the codified regulations specifically. He says this is what the policies say, and my experience in these institutions where I've been confines it differently. Isn't it a plausible inference? He's alleged that he's gone to eight separate institutions, and the same things happen at every one. It's a pro se plaintiff. Isn't it a plausible inference that what he's alleging here is a nationwide policy? I don't think so, because he's not – Did he just happen to hit the eight that do it? We don't dispute that he's alleging that this has happened at multiple facilities. Right. What I'm saying is that he's not taking issue with a language or a specific provision of any policy. He's saying here's what the policy says. My experience in these institutions has been different. So he sued the head of BOP. He alleges, however conclusorily, that he's invariably informed that all of this is being done pursuant to BOP policy. He's seeking relief against the head of BOP to get your house in order, stop this policy, of violating regulations that, under certain circumstances, guarantee these privileges. How else would we construe that? Well, I think that as many courts across the country have held, in similar cases with similar circumstances, that the transfer to the new facility moves the claim. But not if there is this nationwide policy. If there's a nationwide policy, and that seems to be more of an issue. Or a policy that cuts across all these institutions. Yes. For example, in the RF case, which the parties talk about in the briefs, those petitioners were challenging a policy or a procedure. In that case, when those inmates filed their complaint, for example, there were no written codified program statements when the complaint was filed. They were just saying that they were challenging the procedures for designation to a communication management unit. And so the release of those prisoners from that CMU, the acronyms do get a little confusing, but CMU in that case, being RF, the release of those prisoners from the CMUs didn't move their challenge because they were making a policy or procedure challenge. Here it's very different. This inmate, Mr. Reed, is not challenging any policy. He's just saying that. Suppose I read this complaint as alleging a nationwide policy. Do we get to assess the plausibility of that allegation under Twombly and Iqbal as relevant to mootness? Or do we just have to accept it as a given no matter how conclusory, no matter how devoid of factual support, no matter how implausible the ultimate inference? I believe the nature of the claim and whether something is a cognizable, legally sufficient claim does have relevance to the mootness inquiry. Yes, Your Honor. Right. The question is do we get to assess the pleading for that purpose or do we just have to accept it somehow because we're assessing a jurisdictional issue rather than a merits issue? No, I don't think you would need to divorce the allegations and the pleading itself from the analysis of jurisdiction. So why isn't it enough to support a plausible inference that it's happened eight times and we're now beyond the pleadings a little bit and we have the affidavit from one other inmate at the same facility who says, gee, the same thing happened to me? Yeah, and looking at the mootness issue, I think Your Honor can go as the district court could below beyond the face of the pleadings and start looking at some of the extrinsic evidence because it's a 12B1 jurisdictional issue. And here where even though there were multiple facilities where Mr. Reed had been previously confined and the same thing allegedly had happened at each of those, I think there were eight different facilities, that does not mean that a warden or a BOP prison official in some other facility is going to look at a nationwide policy, for example, that the SHU program statement says that when an inmate's in SHU, they should be entitled to a reasonable amount of personal property, which includes magazines. And so there's no indication that just because it happened in Tucson or some other place that the prison official in Lewisburg, for example, is going to do the same thing when the policy says otherwise. So the reasonable expectation or the reasonable likelihood of recurrence goes to the threshold question of whether it's moot, it goes to voluntary cessation, and it goes to capable repetition. And in all three issues, I think the conclusion is the same, that there's no reasonable expectation of recurrence. And to address specifically the capable repetition exception. Is that because he may go to another institution? I mean, at these institutions, he's eight for eight, right? He has a habit of ending up in these places. He was eight for eight up to the filing of the complaint, but there's no indication anywhere in the record that those same deprivations had occurred at Coleman or Lewisburg. And so for the capable repetition exception, I want to focus on a point. Amicus seems to characterize the idea that a single stint in SHU is not long enough to be fully litigated. And we agree that a single stint in SHU, in Mr. Reed's case, is often a couple weeks, maybe even a couple months. You can't fully litigate a case in that amount of time. But that's only half of the test. That's the first half of the capable repetition exception. The other part is where you look at the reasonable, whether there's a reasonable expectation of recurrence. And here, it's not just the fact that Mr. Reed could possibly be reconfined in SHU. It's that he'd be reconfined in SHU and subjected to the same deprivations as previously. So we're not saying that there's no possibility that in the remainder of Mr. Reed's term, he could be reconfined to SHU. I would agree that based on his past performance in the history of incarceration, that may happen. Of course, since he's in the SMU, not SHU, at Lewisburg, there's additional things that would have to happen first. He'd have to graduate from the SMU program before that could even be— SMU is some different program that's designed to reform troublesome prisoners, right? It is. It's a different program. How do we know whether the SMU experience will improve his behavior or not? Well, he can only graduate—the policy statement says he can only graduate from Level 1 to Level 2 to Level 3 if he demonstrates compliance with prison rules. So he can't get out of the SMU program. So why isn't it speculative? Who knows whether he'll get back into SHU because he'll be a new and improved prisoner after he gets through the SMU? Well, I agree it is speculative whether he'd get back into SHU. Multiple things would have to happen. He'd have to show sustained compliance over time. Then he'd be released into the general population. And then he would need to backslide into bad behavior to put him back into SHU. The correct result here should be that the court affirms the district court's dismissal of mootness. Of course, that would not be with prejudice. If Mr. Reed is, in fact, subject to the same deprivations at Lewisburg, either in SMU or after, he could file a new petition. And that would, in the appropriate district court, probably wouldn't be here or shouldn't be here. But as far as the existing allegations, which now are matters of historical fact, those claims are moot. There's no reason to litigate those claims about Tucson and previous facilities. Can we affirm on the ground that there's no cause of action, which is referenced obliquely in the district court opinion? I'd have to go back and look at the district court opinion. I don't recall it being… He says in the absence of a cognizable cause of action, the plaintiff has no basis on which to seek declaratory relief. So it's sort of embedded in the mootness analysis, but it is a statement that there's no cause of action here. Yes. I think that aspect of the district court's opinion can be affirmed as well. And, of course, we raised a number of other thresholds. And exhaustion seems very obvious, though not addressed below. That's right. That's right. Thank you very much. If there are no further questions, thank you. How much time did Mr. Redmond have? We'll give you one minute back. I'd shoot up a lot of it. Thank you, Your Honor. Three quick points. The first is, as far as everything I've heard from BOP, they have not denied the nationwide policy. There might be some dispute with respect to Tucson, but other than that, they haven't denied the nationwide policy. The second relates to SMU. Mr. Reed, BOP, expects him to be out within the next three to seven months. Then he will again be in the revolving door between general population and SHU. Even if he is a perfect, well-behaved inmate after that, he can still be placed in SHU for holdover status and transfer purposes, and has been so repeatedly, as we point out in our reply brief. And third, with respect to the cause of action point and other issues that are revolving around in this case, such as exhaustion, the cause of action issue, as we understand the district court's opinion, was specific to declaratory judgment. And if it was broader than that, we point this court to our opening brief, where we discuss the APA and the cause of action from that. What's the final agency action that you're challenging, that you would have to challenge under the APA? And what's the administrative record? How in the world do you go about showing that the agency's reasoning on the administrative record was arbitrary and capricious? What would you gain from an order setting aside agency action? It just seems a really awkward fit, APA, for the kind of case you want to litigate. May I answer the question, Your Honor? Your Honor, there would be quite a bit of work for the district court to do, and part of the answer would be that Mr. Reed says he didn't have access to the administrative relief, so that's part of the exhaustion answer. But that would need to be decided by the district court in the first instance. Thank you. Okay, thank you. Mr. Redman, you were appointed by the court to represent the appellate in this case, and we thank you for your assistance. Thank you. The case is submitted.
judges: Griffith, Wilkins, Katsas